# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:18-cr-00269 (JAM) |
| | No. 3:13-cr-00181-16 (JAM) |
| CHARLES KELLEY, | |
| *Defendant*. | |

## ORDER DENYING MOTION FOR SENTENCE REDUCTION

Charles Kelley is a prisoner of the Federal Bureau of Prisons ("BOP"). In light of the rapidly spreading coronavirus ("COVID-19"), he moves under 18 U.S.C. § 3582(c)(1)(A) for a reduction of his sentence of imprisonment to allow for his release. I will deny the motion.

### BACKGROUND

On November 25, 2019, I sentenced Kelley principally to a total term of four years of imprisonment and four years of supervised release following his guilty plea to one count of possession with intent to distribute 28 grams or more of cocaine base, which also represented a violation of probation for a prior federal conviction.[1] Doc. #69. Kelley has an extensive record of arrests and criminal convictions over the past 27 years, including several federal and state drug-related convictions. *See* Doc. #57 at 9-16.

In 2014, Kelley pled guilty to a federal drug trafficking charge in which he stipulated to relevant conduct involving 468 grams of cocaine and 750 grams of heroin. No. 3:13-cr-00181 Doc. #808. Following his plea, Kelley exhibited what Judge Underhill recognized at sentencing

---

[1] Specifically, I sentenced Kelley to 36 months imprisonment and four years of supervised release for his possession with intent to distribute conviction, No. 3:18-cr-00269 (JAM), to be served consecutively with the probation violation sentence of 12 months in case No. 3:13-cr-00181-16 (JAM), for a total sentence of 48 months imprisonment. Kelley has filed identical compassionate release motions on the docket for both these cases. This order addresses both motions, but for simplicity citations to docket filings throughout this order refer only those on docket No. 3:18-cr-00269 (JAM) unless otherwise noted.

1

as "extraordinary rehabilitation," including successful completion of the District of

Connecticut's Support Court, inpatient treatment at the rigorous Salvation Army program, and

maintaining sobriety and full-time employment. No. 3:13-cr-00181 Doc. #822-1 at 1. As a result,

when imposing sentence in January 2016, Judge Underhill departed downward to a sentence of

five years of probation, noting that "a sentence of probation preserves the Court's sentencing

options in the event that Kelley returns to a life of drug use or crime." *Id.*

About two years later, Kelley was arrested again in April 2018 for drug trafficking, which

resulted in his most recent federal conviction and current sentence. Kelley is scheduled to

complete his term of imprisonment about 17 months from now in February 2022, with home

detention eligibility beginning in September 2021. Doc. #80-1 at 16.

In his most recent period of incarceration, Kelley has again undertaken rehabilitation

efforts and has earned five certifications in psychology programs. Doc. #81 at 15-16. He states

he has been clean since April 2018 and, if released, he has a "verifiable re-entry plan" of residing

with his partner and their two children in Hartford, which is where he lived "when engaged in

Support Court, when he was his most successful at maintaining employment and sobriety." *Id.* at

16. The Government does not contest that Kelley is "certainly on the right path," but expresses

concern that a sentence reduction would cut short the rehabilitative process, undermine the

specific and general deterrence goals of his sentence, and create significant sentencing disparities

with similarly-situated defendants. Doc. #85 at 16. Given Kelley's criminal history, the

Government states he poses a "substantial risk of recidivism" and that home confinement would

not lessen that risk. *Id.* at 15.

Kelley states that his medical history includes hypertension, a 30-year history of smoking

cigarettes, and past acute respiratory distress syndrome and allergic rhinitis. Doc. #81 at 9.

2

Kelley's BOP medical records confirm that, as of June 2020, Kelley had a current diagnosis of hypertension for which he has been prescribed amlodipine over several years. Doc. #80-3 at 64, 117-129. Kelley also cites data from researchers and the World Health Organization suggesting elevated hospitalization and death rates from COVID-19 for people with hypertension. Doc. #81 at 11; Doc. #86 at 4-5. Kelley argues that BOP's treatment of his hypertension has been ineffective, and its "anemic approach to Mr. Kelley's chronic hypertension leaves him vulnerable to the more serious effects of COVID-19 should he contract the virus." *Id.* at 1. Kelley's medical records also confirm diagnoses of allergic rhinitis and acute respiratory distress syndrome ("ARDS") in January 2020 that were "resolved" as of March 2020. Doc. #80-3 at 64.[2] Kelley alleges that this medical history makes him vulnerable to COVID-19 and presents extraordinary circumstances justifying compassionate release. Doc. #81 at 14.

The Government does not dispute Kelley's history of these conditions, but it argues they do not definitively put Kelley at a heightened risk for more severe illness from COVID-19. Doc. #85 at 6. The Government also notes, to the extent Kelley has a history of smoking, "that history does not appear to have manifested itself in any physical symptoms" or acute complications, and that Kelley had a chest x-ray in January 2020 that found "clear" lungs and "[n]o acute cardiopulmonary disease." Doc. #85 at 6-7; Doc. #80-3 at 103.

Kelley is currently serving his sentence at the medium security correctional institution FCI Cumberland in Maryland. According to the BOP's website, FCI Cumberland has about 1,081 inmates, which includes 140 inmates at the adjacent minimum security camp.[3] Yet, FCI

---

[2] Both Kelley's transfer record, generated March 2, 2020, and dental health history, generated on March 11, 2020, indicate that allergic rhinitis and ARDS are "current" health problems. Doc. #80-3 at 55, 71. But the most recent record of Kelley's health problems, generated on June 16, 2020, indicates that allergic rhinitis and ARDS were "resolved" as of March 11, 2020. *Id.* at 64.

[3] *See* Federal Bureau of Prisons, FCI Cumberland, available at https://www.bop.gov/locations/institutions/cum/ (last accessed September 21, 2020) [https://perma.cc/99UK-B268].

Cumberland reports no current cases of COVID-19 among inmates and none involving a staff member, along with seven inmates and six staff members having recovered and none having died.[4] The BOP has instituted extensive procedures to reduce any likelihood of an outbreak of COVID-19 at FCI Cumberland. *See* Doc. #85 at 9-12.

Kelley has filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), along with a supplemental memorandum in support. Docs. #79-81. The Government has filed an opposition memorandum, Doc. #85, and Kelley has filed a reply, Doc. #86. The parties do not dispute that Kelley has properly exhausted the administrative procedures required before the filing of his motion for release. Doc. #81 at 15; Doc. #85 at 5.

DISCUSSION

I will first review the statutory and regulatory framework that governs motions under 18 U.S.C. § 3582(c)(1)(A). Then I will address how these factors apply to this case.

***Statutory and regulatory framework***

Federal law allows a court to grant a "compassionate release" motion to reduce a federal prisoner's sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Previously it was only the BOP that could file this kind of motion, but amidst widespread complaints about the failure of the BOP to file motions on prisoners' behalf, Congress amended the law with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), to allow prisoners the right to file their own motions for a sentence reduction if they first exhaust the statute's procedures for initially making a request to the warden to file a motion on their behalf. *See United States v. Hill*, 2020 WL 2542725, at *1 (D. Conn. 2020).

---

[4] *See* Federal Bureau of Prisons, COVID-19 Coronavirus, COVID-19 Inmate Test Information, available at https://www.bop.gov/coronavirus (last accessed September 21, 2020) [https://perma.cc/5D2F-2CKF]; *see also* Doc. #85 at 12 (citing the same source of data).

Provided that a prisoner has satisfied the statute's exhaustion requirement, section 3582(c)(1)(A) establishes several criteria for a court to consider when deciding whether to grant the motion for a sentence reduction. First of all, there has to be no less than "extraordinary and compelling reasons" to warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).[5] The statute does not further define this term but it instructs courts to consider whether a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Ibid.* Congress has separately directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," while also advising that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

In accordance with this instruction from Congress, the Sentencing Commission has issued a policy statement in the U.S. Sentencing Guidelines that sets forth criteria for what constitute "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13 cmt. n.1 (2018). The commentary provides, for example, that "extraordinary and compelling reasons" exist if the defendant "is suffering from a terminal illness" or if the defendant otherwise has a serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Ibid.* cmt. n.1(A). The commentary further provides for a catch-all "Other Reasons" that "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an

---

[5] As an alternative to the existence of such "extraordinary and compelling reasons," section 3582(c)(1)(A) allows for motions to be filed by the BOP on behalf of prisoners who are at least 70 years old and have served at least 30 years in prison. 18 U.S.C. § 3582(c)(1)(A)(ii). This alternative is not at issue in this case.

extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Ibid.* cmt. n.1(D).

As numerous courts have recognized, the Sentencing Guidelines have not yet been revised to bring them into conformity with the First Step Act's authorization for defendants to bring their own motions after exhausting administrative procedures. Therefore, to the extent that the Guidelines commentary purports to vest authority solely with the BOP to make a determination of "Other Reasons," this delegation is no longer exclusive; courts also have independent authority to decide whether there are "Other Reasons" that amount to "extraordinary and compelling reasons" to grant a motion for sentence reduction. *See Hill*, 2020 WL 2542725, at *1 (citing cases).

Beyond a court's determination as to whether there exists "extraordinary and compelling reasons" for a sentence reduction, a court must also "consider[] the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Therefore, a court must examine the same factors it did when it initially sentenced the defendant, including the nature and circumstances of the crime, the defendant's history and characteristics, and the multiple purposes of sentencing, such as providing just punishment, deterring crime, protecting the public from further crimes by the defendant, and providing the defendant with rehabilitation. *See* 18 U.S.C. § 3553(a). In addition, a court must determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

### *Factors applying to Kelley*

I first address whether Kelley has shown "extraordinary and compelling" reasons that could warrant a sentence reduction. There is no doubt that the COVID-19 pandemic is

6

extraordinary, having killed more than 190,000 people in the United States in recent months. But Kelley fails to show that his various health issues place him at an appreciable risk of contracting COVID-19, much less that he is particularly vulnerable to the virus's most lethal effects. As the Government has noted, none of his alleged medical conditions are of the sort recognized by the Centers for Disease Control and Prevention ("CDC") to definitively place persons at superordinate risk to COVID-19.[6] Doc. #85 at 6.

Kelley provides evidence of ongoing hypertension while in BOP custody and past ARDS and allergic rhinitis diagnoses, and alleges he has a 30-year history of smoking cigarettes. Doc. #81 at 9; Doc. #87 at 2-7. He also cites data from researchers and the World Health Organization suggesting elevated hospitalization and death rates from COVID-19 for people with hypertension. Doc. #81 at 11; Doc. #86 at 4-5. Yet according to the CDC, people with hypertension or a history of cigarette smoking each "*might* be at an increased risk for severe illness from COVID-19," but people with those conditions are not in the category the CDC states "*are* at increased risk of severe illness from COVID-19."[7]

Although Kelley is correct that hypertension diagnoses have occasionally "contribut[ed] to findings of extraordinary and compelling reasons" by other courts, Doc. #86 at 6, in those cases the prisoner has typically also had another serious health condition creating superordinate risk to COVID-19, resided in a BOP facility with a spreading COVID-19 outbreak, or had already served the majority of a lengthy sentence or was otherwise set to be released shortly. Moreover, in each of those cases the court determined the sentencing factors under 18 U.S.C. §

---

[6] *See* Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), "People with Certain Medical Conditions," last updated September 11, 2020, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed September 21, 2020) [https://perma.cc/Y8EC-Z43A].
[7] *Id.* (italics added).

3553 weighed in favor of a sentence reduction.[8] Those circumstances are not present here. The CDC does not recognize COVID-19 risk factors related to a past diagnosis with ARDS or allergic rhinitis. Furthermore, out of more than 1,000 inmates, there are no reported active COVID-19 cases among inmates at FCI Cumberland, and no reported deaths, although seven inmates and six staff have recovered from COVID-19. All in all, Kelley has not shown that the risk he faces from COVID-19 while imprisoned at FCI Cumberland constitutes an extraordinary and compelling reason for his release from imprisonment.

Turning to the sentencing factors under 18 U.S.C. § 3553, Kelley has an extensive history of drug trafficking and substance abuse. I also recognize that he has made meaningful strides toward rehabilitation since his most recent trafficking activity, and I hope he is able to continue on that path. In the past, Kelley has made real progress toward rehabilitation and demonstrated he can be a productive member of society, but he also has a troubling history of returning to drug trafficking and criminal activity even following a period of success. After considering all of the sentencing factors, I conclude in light of Kelley's record that the purposes of sentencing— including just punishment and deterrence—would not be served if he were released at this time.

---

[8] *See United States v. Rivernider*, No. 3:10-cr-222 Doc. #785 (prisoner released had diabetes, heart disease, and hypertension); *United States v. Luaria*, No. 3:96-cr-185 Doc. #700 (prisoner released had liver disease and hypertension, and had served 24 years of a 35-year sentence); *United States v. Chesney*, No. 3:18-cr-257 Doc. #53 (prisoner released had already served 70 percent of her sentence, and resided at FCI Danbury, one of the most-affected BOP facilities at the time); *United States v. Hill*, 2020 WL 2542725, at *1 (D. Conn. 2020) (prisoner released from FCI Danbury had a splenectomy that compromised his immune system and hypertension); *United States v. Cote*, No. 3:19-cr-61 Docs. #92, #97 (court granted unopposed motion for early release by prisoner with a variety of health issues including pre-hypertension who was already set to be released in five months); *United States v. Bernard*, No. 3:97-cr-48 Doc. #1811 (BOP determined prisoner released was "high risk" for COVID-19 because of conditions including permanent liver damage, neurological disease, hepatitis C, and hypertension, and his "rehabilitative efforts have been nothing short of extraordinary"); *United States v. Zukerman*, 2020 WL 1659880 at *1 (S.D.N.Y. 2020) (prisoner released was 75 years old, with diabetes, obesity, and hypertension, and a letter from his doctor stated he was in "the highest risk category for complications and death from the disease"); *United States v. Sawicz*, 2020 WL 1815851 at *2-3 (E.D.N.Y 2020) (prisoner released from FCI Danbury had less than five months of a five year sentence left to serve).

**CONCLUSION**

For the reasons set forth above and for substantially the reasons stated in the Government's opposition memorandum, the motion of defendant Charles Kelley for a reduction in sentence is DENIED. Doc. #79.

It is so ordered.

Dated at New Haven this 21st day of September 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

9